FILED
Friday, 23 July, 2004  09:12:02 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| PFT ROBERSON, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No. 02-2096 <br> ) |
| VOLVO TRUCK NORTH AMERICA, INC., <br> and VOLVO TRANSPORTATION <br> SERVICES NORTH AMERICA, INC., | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**O R D E R**

Plaintiff PFT Roberson, Inc., a Mahomet, Illinois company, has a fleet of trucks and trailers, which it uses to provide transport services to its customers. Defendant, Volvo Trucks North America, Inc. manufactures, assembles, and sells trucks, and Defendant Volvo Transportation Services N.A., Inc. maintains trucks and trailers.

Roberson contends that the parties all agreed to a multi-year deal which included purchase, trade-in, and maintenance provisions for trucks and trailers, and Roberson claims that Volvo has breached that contract. Both Volvo defendants deny that the parties entered into such an agreement, and Volvo Services has filed a counterclaim alleging that Roberson breached an oral contract by failing to pay for maintenance services.

These breach-of-contract allegations were presented to a jury, and after hearing five days of evidence, the jury awarded Roberson $5,079,846.00 on its breach of contract claim and

awarded Volvo Services $79,808.70 on its counterclaim. This court entered judgment on the verdicts.

Volvo filed a Renewed[1] Motion for Judgment as a Matter of Law and Memorandum of Law in Support (#140), and a Motion for a New Trial (#144) along with Exhibits/Attachments in Support (#142). With the permission of this court, Volvo filed a Revised and Supplemental Motion for New Trial and Memorandum of Law in Support (#161). Roberson filed a Response to Volvo's Rule 59 Motion and Brief (#166).

In addition to these newly-filed motions, two counts from the original complaint remain pending. Roberson sought relief under the Illinois Consumer Fraud and Deceptive Trade Practices Act (the "Act") for a violation of the Act and for conspiracy to violate the Act, but Roberson was not entitled to a jury trial on those counts and so they remain for the court to decide based on the evidence presented at trial. To this end, Roberson filed its Proposed Findings of Fact and Conclusions of Law on January 13, 2004, and submitted a Revised version on January 30 to include citations to the official transcript on file. Volvo filed its Objections and Responses (#162), and Roberson tendered a Reply in Support (#167). Similarly, Volvo filed its Proposed Findings of Fact and Conclusions of Law with respect to Roberson's claim under the Act on February 27, 2004, and Roberson filed a Response (#165).

## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

The Federal Rules of Civil Procedure allow a party to renew its request for judgment as a matter of law within ten days of the entry of judgment. Fed. R. Civ. P. 50(b). Viewing the evidence in the light most favorable to Roberson, the prevailing party, <u>Learning Curve Toys, Inc.</u>

---

[1] Volvo filed its original Motion for Judgment as a Matter of Law (#127) after the conclusion of the Plaintiff's evidence. That motion was denied.

v. PlayWood Toys, Inc., 342 F.3d 714, 721 (7th Cir. 2003), this court must evaluate whether any reasonable jury could have reached the same conclusion, Liu v. Price Waterhouse LLP, 302 F.3d 749, 754 (7th Cir. 2002). Volvo faces an difficult battle in seeking to have the jury verdict overturned, and indeed the Seventh Circuit has referred to it as a "hard row to hoe." Zelinski v. Columbia 300, Inc., 335 F.3d 633, 638 (7th Cir. 2003). This court will only reverse the jury's verdict if there was not a legally sufficient evidentiary basis to support it. McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 564 (7th Cir. 2003).

Volvo suggests that it is entitled to judgment despite the jury's verdict for three main reasons: (1) no contract existed because the parties' preliminary writings were not final or complete and because they anticipated the signing of formal contract documents; (2) Roberson repudiated the contract by continuing to negotiate and so any breach was excused; and (3) Roberson was not entitled to damages because it received a better deal from Freightliner and because Volvo was not the cause of any damages it suffered.

This court will not recite all of the evidence at trial, which lasted many days and is transcribed in six volumes of transcripts. But on each of the points Volvo raises, the jury heard conflicting evidence and argument. Clearly Roberson, based on the evidence it presented at trial, believed that the preliminary writings were sufficient to create a legally-binding contract, that it had not repudiated the contract and had in fact suffered damages. And Roberson argued as much to the jury. Now is not the time to question whether the jury believed "the right people," but rather whether it saw sufficient evidence to support its verdict. Zelinski, 335 F.3d at 638.

Based on the evidence presented at trial, a verdict for Roberson was a reasonable outcome for a jury to reach, despite Volvo's protestations to the contrary. Consistent with the

legal instructions provided by the court, the jury had enough evidence to support the conclusions that the parties had a contract which Volvo breached, causing damages to Roberson.

Volvo's renewed motion for judgment as a matter of law is denied.

## MOTION FOR A NEW TRIAL

A party may seek a new trial "for any of the reasons for which new trials have heretofore been granted." Fed. R. Civ. P. 59(a). In analyzing such a motion, this court must determine whether "the verdict is against the weight of the evidence, the damages are excessive [or insufficient], or if for other reasons the trial was not fair to the moving party." Shick v. Ill. Dep't of Human Servs., 307 F.3d 605, 611 (7th Cir. 2002). It is important to note, however, that a Rule 59(a) motion is not intended as an opportunity to relitigate issues already decided by the court or to essentially try the case again in writing. Fort Howard Paper Co. v. Standard Havens, Inc., 901 F.2d 1373, 1380 n.4 (7th Cir. 1990).

1.      Improper Evidence/Instructions

Volvo argues that it suffered irreversible prejudice due to several categories of evidence admitted at trial. Volvo first contends that this court erroneously allowed evidence at trial about the parties' subjective intent in negotiating and forming a contract, and Volvo again urges an interpretation of Seventh Circuit case law that would not allow any evidence beyond the express writings of the parties. Again, however, this court disagrees with that interpretation.

In negotiating a contract, whether the parties intended to be bound by preliminary discussions is to be determined solely from the writings themselves and not from any subjective beliefs. Ocean Atl. Dev. Corp. v. Aurora Christian Schs., Inc., 322 F.3d 983, 995 (7th Cir. 2003). If, however, the writings are ambiguous about the parties' mutual intent to be bound by

the agreement, then evidence beyond the writing must be considered at trial in deciding the issue. Id. at 996-97; Magallanes Inv., Inc. v. Circuit Sys., Inc., 994 F.2d 1214, 1218 (7th Cir. 1993). Based on these cases, evidence about subjective intent was properly admitted at trial because the express writings of the parties were themselves ambiguous about the mutual intent to be bound.

In a similar vein, Volvo asserts that jury instruction #17, which advised the jury to consider the words and conduct of the parties, as well as the circumstances under which the words and conduct occurred was improper. But given this court's reading of Ocean Atlantic and Magallanes, this instruction was not erroneous.

Volvo also maintains that this court's failure to bifurcate the trial resulted in an unfair proceeding because the jury heard evidence on the claims under the Act as well as the contract claims. Both parties agree that all the evidence for all the counts, including those relating to the Act, was presented to the jury in accordance with this court's prior denial of Volvo's motion in limine. Volvo suggests that this was improper.

Despite its protestations, however, Volvo identifies no specific evidence, exhibits, or argument that it believes prejudiced the jury. Instead, as this court expected when making its ruling, evidence that was relevant to the Act claims was also relevant to the jury's decision on the contract claims. Moreover, although this court repeatedly offered that any possible prejudice to the jury caused by introduction of evidence relating to the Act claims could be avoided with the use of a limiting instruction, Volvo neither proposed nor requested that such instruction be given. It is disingenuous to now argue that such evidence mandates a new trial.

Volvo next argues that Roberson's exhibits concerning damages were disclosed too late and should not have been allowed at trial and that Roberson's damages witness, Craig Hanlin, lacked a solid foundation for his calculations.  These are old arguments, however—ones that the court addressed before and during the trial.  In response to Volvo's motion in limine concerning the damages evidence, this court concluded that, although Plaintiff had not tendered specific damage exhibits, it had disclosed sufficient information during discovery to warrant a discussion of damages at trial.  Moreover, this court allowed Volvo's expert to testify, despite disclosure of his name only at the final pretrial conference, in fairness to Volvo on the issue of damages.  As to Hanlin's testimony, Volvo was free to cross-examine him about the foundation for his damages estimates.  And indeed Volvo vigorously challenged his calculations when Hanlin was on the witness stand.  The damages evidence was not improper and does not justify a new trial.

Volvo also takes issue with the verdict form given to the jury because it listed all four elements of damages under both Volvo Trucks and Volvo Services.  Volvo argues that each company was responsible only for two of the types of damages and the jury should not have been given the opportunity to assign all damages against both companies.  But Roberson presented evidence and argument to the jury that Volvo Trucks and Volvo Services were in fact one entity—a "shell game" of sorts—and if the jury believed that analysis, then it may have wished to award damages to the two defendants in a manner different than Volvo argued.

Volvo next suggests that the "truck maintenance costs" element of damage should not have been listed because Roberson conceded at trial that it actually saved money with respect to that category.  Volvo argues that the jury was clearly confused by the verdict form and had to return to the deliberation room to fill it out correctly.  This court first notes that the jury did not

express any confusion over the verdict form but had merely failed to total the damage award, and in the interest of completeness, was asked to fill in that line. Next, Volvo did not object to the inclusion of "truck maintenance costs" on the verdict form, and indeed, it benefitted from that element because Roberson admitted, and the jury agreed, that Volvo was entitled to a credit as to that element.

2.   Weight of the Evidence

Volvo also seeks a new trial by arguing that the jury's verdict was against the manifest weight of the evidence presented at trial. In support of this claim, Volvo first contends that the evidence "unquestionably" showed that the parties' preliminary writings were not final and complete. Instead, according to Volvo, the evidence at trial established that the parties expressly agreed that a formal contract would be forthcoming. As such, Volvo asserts, no reasonable jury could have concluded that a contract existed.

In recounting the evidence that Volvo believes bolsters its theory of the case, Volvo misses a key rule of law at this stage in the proceedings. Volvo cannot succeed merely by identifying evidence that would support a verdict in its favor. Hayes v. Potter, 310 F.3d 979, 982 (7th Cir. 2002). Instead it must convince this court that the verdict was against the manifest weight of the evidence such that the verdict rendered at trial was the result of an unreasonable interpretation of the evidence. ABM Marking, Inc. v. Zanasi Fratelli, S.R.L., 353 F.3d 541, 545-46 (7th Cir. 2003).

Volvo is correct that when parties make it clear that their contractual obligations are dependent upon the signing of a formal final contract, then preliminary writings and negotiations are not binding. Ocean Atl., 322 F.3d at 996. Similarly, however, a contract may be enforced even though some terms are missing or are left to be finalized at a later date. Academy Chicago

Publishers v. Cheever, 578 N.E.2d 981, 984 (Ill. 1991). The task for the jury was to decide which of these principles of law most accurately described the situation.

Clearly, Volvo believed that the parties had not yet finalized their negotiations while Roberson thought that the parties had reached an agreement with only a few minor terms left to discuss. Both parties presented much evidence to support their own version of the facts, and each side argued its position to the jury. Roberson offered into evidence several emails from Volvo, including the one on December 6, 2001, setting forth material terms of the contract, which were repeated in the various formal documents Volvo had signed. Witnesses for Roberson testified about conversations with Volvo executives referencing the deal that the parties had reached. The jury ultimately sided with Roberson on the breach-of-contract issue, and, in light of the evidence Roberson offered, the verdict was not an unreasonable one.

3.    Damages

Volvo seeks a new trial on the issue of damages, claiming that the $5,079,846 award represents a compromise by the jury and also bears no rational relationship to the evidence at trial. But the jury is afforded wide discretion in determining the appropriate amount of damages to award, Liu, 302 F.3d at 756; Nilsson v. NBD Bank of Ill., 731 N.E.2d 774, 781-82 (Ill. App. Ct. 1999), and Illinois law instructs that courts should be reluctant to interfere with that exercise of discretion, Galloway v. Kuhl, 806 N.E.2d 251, 255 (Ill. App. Ct. 2004). In evaluating the propriety of a damage award, this court will view the evidence in the light most favorable to the verdict, Carter v. Chicago Police Officers, 165 F.3d 1071, 1082 (7th Cir. 1998), and will look only at the "bottom line" in assessing reasonableness rather than surmising about the jury's

mental processes leading up to the verdict, Tuf Racing Prods, Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000).

Despite the caution with which courts are instructed to review jury verdicts, a compromise verdict—one that occurs when a jury resolves its inability to reach a unanimous verdict on liability by awarding inadequate damages—cannot stand. Carter, 165 F.3d at 1082; Winters v. Kline, 801 N.E.2d 984, 989 (Ill. App. Ct. 2003). But proving a compromise verdict is difficult. If the evidence is sufficient to support the verdict as rendered by the jury, this court will not speculate that it was the result of an improper compromise. Miller v. Pinnacle Door Co., Inc., 703 N.E.2d 628, 632 (Ill. App. Ct. 1998). Moreover, the simple fact that the damage award may be insufficient does not indicate a compromise verdict. Carter, 165 F.3d at 1082; Miller, 703 N.E.2d at 632. Instead, to suggest a compromise verdict, the damages must not merely be against the manifest weight of the evidence, but must "bear no reasonable relationship to the evidence." Miller, 703 N.E.2d at 632.

At trial, the issues of liability and damages were sharply contested. Addressing damages, Roberson explained to the jury its belief that Volvo's breach of contract cost the company $10,159,696.63 due to increased costs of new trucks, reduced trade-in value, and increased trailer maintenance costs. Roberson had originally sought damages for increased truck maintenance costs as well, but after reviewing its calculations, it determined that it was actually better off in terms of those costs after Volvo's breach. Accordingly, Roberson asked at trial that their damages be reduced by a certain amount as to that element. Volvo countered with its expert witness who opined that by entering into a new contract with Freightliner, Roberson

actually saved itself a total of $5.6 million. The jury's verdict of $5,079,846 was almost exactly half of what Roberson was seeking.

Additionally, Volvo presented a counterclaim and requested $199,500 in damages, a calculation that was based on Volvo's cents-per-mile estimation. Roberson argued that any damages as to the counterclaim should be calculated on a time-and-materials basis, which would only result in $79,808.70 owed to Volvo. The jury apparently agreed with Roberson and awarded Volvo $79,808.70 for its counterclaim.

Volvo suggests that the jury's decision to split Roberson's damages in half—even on the element that Roberson agreed resulted in a credit to Volvo—combined with the finding on Volvo's counterclaim indicates that the jury compromised on the issue of damages. Volvo argues that if the jury believed Roberson on the issue of liability, it should have found in favor of Roberson on the counterclaim. Conversely, if the jury accepted Volvo's evidence, it should have awarded Roberson nothing given the testimony of Volvo's damages expert.

Volvo seems to be misconstruing the relationship between the various claims and damages elements. Roberson's breach of contract claim and Volvo's counterclaim that Roberson breached its service agreement were not mutually exclusive claims. That is, the jury could logically find that Volvo breached the underlying contract with Roberson and that, at the same time, Roberson breached the agreement the parties had reached concerning maintenance. Those positions are not inconsistent, and the jury's finding on one claim does not necessarily impact the finding or damages on the other claim.

Although it is true that the jury opted to award almost exactly half of the damages Roberson sought, that mathematical calculation does not invalidate the verdict as an

impermissible compromise. Where experts differ as to the appropriate amount of damages, a jury is not required to accept either opinion in whole. To-Am Equip. Co., Inc. v. Mitsubishi Caterpillar Forklift Am., Inc., 152 F.3d 658, 664 (7th Cir. 1998) (upholding a jury award that "more or less split the difference between the two experts' estimates, and thus easily fell within the range of valuation testimony presented"). The jury is entitled to reduce the damages amount offered by an expert without rendering its verdict invalid. Nilsson, 731 N.E.2d at 782.

The critical question in determining whether the damages award is improper is whether the award bears any reasonable relationship to the evidence. Miller, 703 N.E.2d at 632. Volvo argues that it does not, but this court cannot accept that interpretation of the evidence at trial. Volvo spends many pages recounting the evidence it offered at trial to refute Roberson's claims of liability and damages. Volvo details the relative credibility of each witness and the reliability of documents offered at trial. Clearly the jury saw the evidence differently from the way Volvo argued it should, but that alone does not make the damage award contrary to the evidence presented because Roberson also offered a very viable theory to support its claims.

For these same reasons, Volvo's request for a remittitur is denied. A remittitur should only be allowed to correct a damage award that "falls outside the range of fair and reasonable compensation, appears to be the result of passion or prejudice, or is so large that it shocks the judicial conscience." Epping v. Commonwealth Edison Co., 734 N.E.2d 916, 918 (Ill. App. Ct. 2000). Volvo argues that the jury's verdict is contrary to the law because the jury failed to adequately reduce the award for Roberson's failure to mitigate. Again, however, this court will not accept Volvo's invitation to substitute its own judgment—or rather Volvo's judgment—for that of the jury. Perhaps the jury reduced the damages award because it did not fully accept the

testimony of Roberson's damages witness. Perhaps the jury found that Roberson did adequately mitigate its damages but still was entitled to almost $5.1 million. The award was within the range of possibilities presented at trial, and so a remittitur is inappropriate. Id. ("Remittitur should not be applied when the award 'falls within the flexible range of conclusions which can be reasonably supported by the facts.'").

Lastly, Volvo seeks an additur on the jury award for its counterclaim against Roberson. This request is puzzling, given that Volvo itself cites to well-settled law that "additur may be awarded only where the defendant consents to it as an alternative to a new trial, even where the damages are liquidated or the evidence of damages is essentially undisputed." Allstate Ins. Co. v. Mahr, 767 N.E.2d 494, 496 (Ill. App. Ct. 2002). As to the counterclaim, where Volvo is the plaintiff and Roberson the defendant, the issue of damages was contested based on two different methods of calculating the amount owed. Volvo's request for additur must be denied given that the amount of damages (and the method of calculation) was disputed and that the defendant on this claim—Roberson—does not agree.

Furthermore, the jury's award on this claim is supported by the record. As noted, each party offered an explanation of why its particular method of calculating damages was appropriate. The jury accepted the evidence offered by Roberson in figuring the appropriate award for Volvo's counterclaim. Nothing in the verdict suggests that this court should interfere with that determination.

Volvo's motion for a new trial is denied in its entirety.

## ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT

The Illinois Consumer Fraud and Deceptive Trade Practices Act (the "Act"), 815 Ill. Comp. Stat. 505/1-12, was enacted to "protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 960 (Ill. 2002). Illinois courts, therefore, instruct that the statute is to be liberally construed to effectuate that purpose. Id.; Cuculich v. Thomson Consumer Elecs., Inc., 739 N.E.2d 934, 939 (Ill. App. Ct. 2000).

In order to establish a claim under this Act, Roberson must prove (1) a deceptive act or practice by Volvo; (2) Volvo's intent that Roberson rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. Robinson, 775 N.E.2d at 960. Roberson need not establish actual reliance, but must show that the deception proximately caused its injury. Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 593 (Ill. 1996). Moreover, the "intent" required by the statute is only Volvo's intent that Roberson rely on its allegedly deceptive acts, not an actual intent to deceive. Cuculich, 739 N.E.2d at 939.

1.    Burden of Proof

The Act does not include a burden of proof for private causes of action, and the Illinois Supreme Court has not yet spoken on the issue. Avery v. State Farm Mut. Auto. Ins. Co., 746 N.E.2d 1242, 1262 (Ill. App. Ct. 2001). Although Volvo asserts that it is only by clear and convincing evidence that it may be held liable, the majority of Illinois Appellate Courts have held that the requisite burden of proof is preponderance of evidence. Id.; Cuculich, 739 N.E.2d at 940-41; Malooley v. Alice, 621 N.E.2d 265, 268-69 (Ill. App. Ct. 1993).

2. Deceptive Acts or Practices

The Act defines as deceptive acts and practices to include but not be limited to "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce."  815 Ill. Comp. Stat. 505/2.  A practice is deceptive if "it creates a likelihood of deception or has the capacity to deceive."  Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 938 (7th Cir. 2001).  Roberson claims that Volvo violated the Act twice — by deceiving Roberson about its maintenance capabilities and by attempting to "bait and switch" Roberson.

First, Roberson suggests that Volvo misrepresented its capability to maintain Roberson's trucks and trailers because Volvo needed Roberson's business but knew that Roberson would not buy new trucks from Volvo unless Volvo also provided nationwide maintenance.  Roberson asserts that Volvo promised nationwide maintenance of Roberson's fleet but lacked the in-house staff to carry out that promise and failed to arrange outside vendors to do the work.  In support of this claim, Roberson cites to e-mails and other internal documents from Volvo personnel discussing the lack of resources to administer a cost-per-mile maintenance program for Roberson.  Roberson argues that this representation was deceptive, was made with the intent that Roberson rely on it, and occurred during a commercial transaction so as to violate the Act.

Volvo responds by first reminding Roberson that it admitted satisfaction with Volvo's maintenance services in prior years.  Further, some of Roberson's top executives toured the Volvo Services' operation and could witness first-hand Volvo's capabilities.  The most damning piece of evidence to Roberson's claim is Volvo's assertion at trial, through the testimony of

Patrick McNamara, that it had made the necessary arrangements to begin servicing Roberson's vehicles in January 2002. McNamara explained that although they had not hired new service staff, they had agreements with contractors to provide the service needed. Despite Volvo's internal musings about staffing, there is no evidence in the record to suggest that Volvo could not follow through with nationwide maintenance. It cannot be said, therefore, that Volvo's promise of maintenance was deceptive or unfair.

Second, Roberson uses the term "bait and switch" to describe what it believes to be Volvo's second deceptive act. Roberson claims that after it accepted the terms of Volvo's offer, Volvo inserted a $20 monthly fee per truck into the contract documents without notifying Roberson. Roberson also asserts that when it disputed this fee, Volvo demanded a reduced trade-in term for new trucks. According to Roberson, Volvo knew from the beginning that it would need the $20 fee to make the contract financially viable but that it withheld that information until after Roberson had accepted the offer. Volvo argues that Roberson was always aware of this $20 fee and that both parties in fact agreed that it should be included in the contract but disagreed as to how and when it would be applied.

The parties's dispute on this issue stems from their respective theories of the case. Roberson, believing that the parties had a contract as of December 6, interpreted Volvo's continued discussion about the $20 fee as not only a breach but also a deceptive one since Volvo knew from its internal calculations that it needed that fee in the contract. Volvo, on the other hand, was not under the impression that the parties had a final agreement in early-December and hence the continued haggling over the $20 fee and the length of the trade-in term was part of the negotiation process.

The jury found that the parties had reached a contract, which Volvo breached. Consistent with that finding, the $20 fee falls into the category of contract terms that are left to be finalized at a later date. See, e.g., Cheever, 578 N.E.2d at 984. Roberson cannot claim that it was unaware that Volvo sought the inclusion of the $20 fee, and the late mention of the trade-in term was Volvo's alternative solution for finalizing that detail. Accordingly, Volvo did not act deceptively or unfairly to induce Roberson's business.

Judgment is entered in favor of Defendants on Counts III and IV of the First Amended Complaint.

## MOTION FOR ATTORNEYS' FEES AND COSTS

Roberson has submitted a motion for attorneys' fees and costs (#151). This court stayed further briefing on that matter until it disposed of the post-trial motions and bench trial issues. Volvo will have 21 days to respond to the motion, and Roberson may file a reply within 14 days of the response if it wishes.

## CONCLUSION

IT IS THEREFORE ORDERED:

    (1)    Volvo's Renewed Motion for Judgment as a Matter of Law (#140) is DENIED.

    (2)    Volvo's Motion for a New Trial (#144, as amended by #161) is DENIED.

    (3)    Judgment is entered in favor of Defendants on Counts III and IV.

    (4)    Volvo will have 21 days from the date of this order to respond to Roberson's Motion for Attorneys' Fees and Costs (#151). Roberson may file a reply 14 days after the response if it wishes.

ENTERED this 22nd day of July, 2004.

        /s/ Michael P. McCuskey
        U.S. DISTRICT JUDGE